BOARD OF TRUSTEES OF THE CITY OF BERKLEY PUBLIC
SAFETY RETIREMENT SYSTEM v DUNCAN

Docket No. 117415. Submitted May 15, 1990, at Detroit. Decided
February 19, 1991, at 9:00 A.M.

The Board of Trustees of the City of Berkley Public Safety
Retirement System brought an action in the Oakland Circuit
Court to determine the beneficiary of the pension benefits of
former Berkley Police Officer Norman Duncan, deceased. The
court, ·Edward Sosnick, J., denied summary disposition for
Nancy J. Duncan, Norman Duncan's second wife, but granted
summary disposition for Betty L. Duncan, his first wife. Nancy
Duncan appealed, alleging that the court erred in finding that
a provision of Norman and Betty Duncan's property settlement,
permitting Betty to remain as the beneficiary of Norman's
pension plan, superseded Norman's subsequent designation of
Nancy as the pension beneficiary.

The Court of Appeals *held:*

At the time of the divorce, city police pensions were exempt
from any legal process. Although a divorce court could take
pension benefits into account when disposing of the marital
assets, pension funds themselves were not subject to the court's
process.

The divorce court's declaration that Betty remain as the
pension beneficiary was an attempted exercise of the court's
process on the funds themselves in excess of its jurisdiction.
The court granting the divorce judgment was without authority
to order the appointment of Betty as the beneficiary or to later
have the appointment enforced against Norman's designated
beneficiary, Nancy. The naming of Betty in the divorce degree
as the beneficiary cannot be given legal effect.

Reversed and remanded for entry of summary disposition in
favor of Nancy Duncan.

SHEPHERD, J., dissenting, stated that this case involves the

REFERENCES

Am Jur 2d, Divorce and Separation §§ 907, 937, 948, 949; Pensions
and Retirement Funds §§ 1657, 1658.

Pension or retirement benefits as subject to award or division by
court in settlement of property rights between spouses. 94 ALR3d
176.

specific enforcement of an agreement between Norman and Betty Duncan, rather than an assignment of pension benefits or an attempt to use the court's process to attach the funds themselves. Betty Duncan has a greater right to the pension benefits than Nancy Duncan.

DIVORCE — MARITAL ASSETS — POLICE OFFICERS' PENSIONS.

Before June 13, 1985, a court could not award a city police officer's wife full rights to remain as beneficiary of her husband's pension as part of a divorce settlement, although it could take pension benefits into account when disposing of marital assets (MCL 38.559[6]; MSA 5.3375[9][6]).

*Ronald Zajac, P.C.* (by *Ronald Zajac* and *David M. Parrott*), for the Board of Trustees of the City of Berkley Public Safety Retirement System.

*Weisman, Trogan, Young & Schloss, P.C.* (by *John A. Ruemenapp*), for Betty Duncan.

*Goldstein, Serlin, Reizen, Rosenbaum & Baker, P.C.* (by *Mark E. Reizen* and *Barry M. Rosenbaum*), for Nancy Duncan.

Before: MICHAEL J. KELLY, P.J., and HOLBROOK, JR., and SHEPHERD, JJ.

MICHAEL J. KELLY, P.J. Defendant Nancy Duncan appeals as of right from circuit court orders denying her motion for summary disposition and granting summary disposition for Betty Duncan. We reverse.

Plaintiff brought this action seeking a declaratory judgment to determine the beneficiary of Norman Duncan's pension benefits. Norman and Betty Duncan were divorced on February 27, 1979. At the time of the divorce, Norman was a City of Berkley police officer and an active member of the department's pension plan. Pursuant to the property settlement portion of the judgment of divorce,

each party was awarded respective pensions free and clear of any interest of the other party. The following proviso was added:

> Provided, however, that the plaintiff, Betty Duncan, be and she is hereby awarded full rights to remain as beneficiary on the pension plan or retirement plan of the defendant, Norman Duncan.

No steps were taken to implement this ambiguous proviso.[1] Norman took no steps to designate Betty as his beneficiary and Betty did not serve a copy of the judgment on the pension trustee. The intent of the parties is not discernible from this record, but we find it to be unnecessary to disposition because interpretation of a statute mandates reversal.

On May 20, 1982, Norman and Nancy Duncan were married and remained married until Norman's death on December 20, 1987. On February 19, 1985, Norman designated Nancy as the beneficiary of his pension plan. He retired on September 4, 1985. After Norman's death, Nancy received benefits as the beneficiary of Norman's pension. Nancy received $1,282.57 per month (sixty percent) of the deceased retiree's benefits. On March 8, 1988, Betty requested benefits in accordance with the February 27, 1979, judgment of divorce. Because Betty could have qualified as a survivor beneficiary only under the pension's fifty percent formula, her dollar entitlement would have been less. No determination of that amount was made at the trial level. Facing competing claims for benefits, plaintiff initiated the instant action for declaratory relief.

---

[1] Whether Betty was to "remain" beneficiary until changed by Norman or by operation of law or by order of the court is not specified.

The issue presented is whether the naming of Betty as the pension beneficiary under the judgment of divorce supersedes Norman's subsequent designation of Nancy as the pension beneficiary. At the time of the divorce, city police pensions were exempt from any legal process. MCL 38.559(6); MSA 5.3375(9)(6). This insulated such a pension from process in a divorce proceeding. See *Public School Employees' Retirement Bd v Wexford Circuit Judge,* 39 Mich App 568; 197 NW2d 854 (1972). Although MCL 38.559; MSA 5.3375(9) was subsequently amended to allow pensions to be distributed as marital assets, the amendment only applies to judgments of divorce awarded on or after June 13, 1985. *Sommerville v Sommerville,* 164 Mich App 681, 688; 417 NW2d 574 (1987). It is correct, as Betty urges, that in 1979 courts could take pension benefits into account when disposing of marital assets. See *Lindner v Lindner,* 137 Mich App 569; 358 NW2d 376 (1984). However, the pension funds themselves were not subject to the court's process. *Id.,* p 572.

On these facts, we hold that the divorce court's declaration in the February 27, 1979, judgment that Betty "remain" as the pension beneficiary was either precatory or fails as an attempted exercise of the court's process on the funds themselves. For purposes of this decision we must assume that the divorce court's intent was more than just to designate Betty as an interim beneficiary until Norman's marital status changed or until an effective written designation was implemented. We decide the issue construing the facts most favorably to Betty. We hold that the declaration in the February 27, 1979, judgment that Betty "remain" as the pension beneficiary was an attempted exercise of the court's process on the

funds themselves, an exercise in excess of its jurisdiction.[2]

MCL 38.559(6); MSA 5.3375(9)(6) specifically provided that a beneficiary's rights under the act would not be subject to process of law. Therefore, the court granting the divorce judgment was without authority to order the appointment of Betty as beneficiary or to later have it enforced against Norman's designated beneficiary. Although the law has changed, as mentioned above, it is of no consequence to judgments of divorce awarded before June 13, 1985. Accordingly, the divorce decree's naming of Betty as the pension beneficiary cannot be given legal effect.

Reversed and remanded for entry of summary disposition in favor of defendant Nancy Duncan. Plaintiff's payment obligation is to be determined on remand.

HOLBROOK, JR., J., concurred.

SHEPHERD, J. (dissenting). I dissent and would hold that Betty L. Duncan, the first wife of Norman Duncan, has a greater right to the pension benefits than Nancy Jeanne Duncan, the deceased's second wife. I do not perceive this to be a case of an assignment of pension benefits or an attempt to use the court's process to attach the funds themselves. I view this as the specific enforcement of an agreement between Norman and Betty Duncan.

If, at the time of the divorce, Norman had

---

[2] To the extent that Judge SHEPHERD sees a mutual agreement by the parties, a "bargain," we think the conduct of the parties belies such a construction. A more plausible assumption would be that the divorcing husband had no existing compunction to designate a beneficiary. Betty, his first wife, was the plaintiff in the divorce action. She was *not* at any time a designated beneficiary, either before or after the divorce, according to plaintiff's records.

abided by the agreement and had named Betty as the beneficiary, there would be no question that the agreement could be enforced. Norman had the complete right to designate whichever beneficiary he chose, and by consenting to the judgment of divorce, he chose to designate Betty and agreed not to change his mind. In exchange for that agreement he obtained whatever benefits were awarded to him under the divorce settlement. I accept the fact that the court could not force him to designate a beneficiary, and this raises the issue whether the parties to the divorce action could agree to do an act which the court could not force them to do in the absence of an agreement. That issue was resolved in *Kasper v Metropolitan Life Ins Co,* 412 Mich 232; 313 NW2d 904 (1981). Michigan law prohibited a divorce court from conveying property to a third party in a contested case. Nevertheless the parties agreed in the divorce that Stephen Kasper would be required to keep his minor child, Jason, as the beneficiary of a life insurance policy until the child reached the age of eighteen. Four months after the divorce Stephen Kasper named his father as the beneficiary. The Supreme Court held that, "predicated on an agreement, rather than the court's separate power to adjudicate, the obligation of Stephen Kasper to maintain his minor son as a beneficiary on a life insurance policy would be enforceable." 412 Mich 238.

The statute in question prohibits an assignment of benefits and the subjection of benefits to execution, garnishment, attachment, or any other process of law. As I have indicated, this was not an assignment of benefits. It might have been an assignment of benefits had the deceased been collecting benefits at the time of the agreement. In this case we are only concerned with the right to

designate a beneficiary, and the only dispute before the court is which designated beneficiary has the greater right.

I am inclined to favor decedent's first wife, who made a bargain and now is being deprived of her share of the bargain. To the extent that benefits were paid before the retirement system had notice of the claim, a legitimate argument can be made that the amounts already paid to the second wife, Nancy Jeanne Duncan, may not be recouped. That issue is not before us, nor did the trial court address it. For the reasons stated, I would affirm the decision of the trial court without prejudice to the parties' right to address the trial court on the proper allocation of benefits based upon the time of notification of the existence of the judgment of divorce and any factors relating to the computation of the benefits that are due Betty, including her status as a former wife, to the extent that the language of the pension plan makes a distinction between former and present spouses.